1 **Albert N. Kennedy**, OSB No. 821429 (Lead Attorney)
  Direct Dial: (503) 802-2013
2 Facsimile: (503) 972-3713
  E-Mail: al.kennedy@tonkon.com
3 **Timothy J. Conway**, OSB No. 851752
  Direct Dial: (503) 802-2027
4 Facsimile: (503) 972-3727
  E-Mail: tim.conway@tonkon.com
5 **TONKON TORP** LLP
  1600 Pioneer Tower
6 888 S.W. Fifth Avenue
  Portland, OR 97204
7
      Attorneys for Debtor
8

9

10                UNITED STATES BANKRUPTCY COURT

11                      DISTRICT OF OREGON

12  In re                                  Case No. 16-30119-pcm11

13  HemCon Medical Technologies, Inc.,     **DEBTOR'S SECOND AMENDED MOTION
                                           FOR ORDER APPROVING (A) BID AND**
14              Debtor.                     **SALE PROCEDURES INCLUDING BREAK
                                           UP FEE TO TRICOL INTERNATIONAL**
15                                          **GROUP LIMITED AS STALKING HORSE
                                           BIDDER; (B) SALE OF DEBTOR'S ASSETS**
16                                          **FREE AND CLEAR OF LIENS, CLAIMS
                                           AND ENCMBRANCES; AND**
17                                          **(C) ASSUMPTION AND ASSIGNMENT OF
                                           EXECUTORY CONTRACTS**
18
                                           *(EXPEDITED HEARING REQUESTED)*
19

20          HemCon Medical Technologies, Inc., Debtor and Debtor-in-Possession

21  ("Debtor" or "HemCon"), moves this Court for an order (A) establishing bid and sale

22  procedures including a break-up fee to Tricol International Group Limited ("Tricol") as the

23  stalking horse bidder; (B) approving the sale of Debtor's assets free and clear of all liens,

24  claims, interests and encumbrances to the bidder with the highest and best offer received at

25  an auction (the "Successful Bidder"); (C) determining that the Successful Bidder is not a

26  successor to Debtor; (D) enjoining any person who has received notice from pursuing the

**Page 1 of 16** - DEBTOR'S SECOND AMENDED MOTION FOR ORDER APPROVING (A) BID AND SALE PROCEDURES
INCLUDING BREAK-UP FEE TO TRICOL INTERNATIONAL GROUP LIMITED AS STALKING HORSE
BIDDER, (B) SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS ASSETS AND
ENCMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1 | Successful Bidder to recover on any claims they may have against Debtor; and (E) approving

2 | the assumption and assignment of executory contracts to the winning bidder.  Debtor requests

3 | an expedited hearing with respect to the bid and sale procedures such that an order can be

4 | entered approving the applicable procedures on February 8, 2016.

5 | **INTRODUCTION**

6 | 1.      Debtor filed its voluntary petition for relief under Chapter 11 of the

7 | Title 11 of the United States Code ("Bankruptcy Code") on January 15, 2016 ("Petition

8 | Date").

9 | 2.      Debtor is currently operating its business and managing its property as

10 | Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

11 | **JURISDICTION**

12 | 3.      This Court has subject matter jurisdiction to consider this matter

13 | pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is properly before this Court pursuant to 28

14 | U.S.C. §§ 1408 and 1409.

15 | 4.      The statutory predicates for the relief sought herein include Sections

16 | 105(a), 363, 365, and, if applicable, 1146 and 1129 of the Bankruptcy Code and Rules 2002,

17 | 6004, 6006, 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and

18 | applicable local rules and administrative orders.

19 | **BACKGROUND**

20 | 5.      Beginning in February 2015, Debtor's executives began taking actions

21 | to address capital requirement needs of Debtor and its affiliates.  In May 2015, new equity

22 | capital was sought for investment into Debtor's parent company, TriStar Wellness Solutions,

23 | Inc. ("TWSI") to operate Debtor.  A diligence room, documents and business plans were

24 | made available to those with transactional interest.  The effort was aimed at three market

25 | groups, broker/dealer investment firms; individual investors/funding source finders; and trade

26 |

**Page 2 of 16** - DEBTOR'S SECOND AMENDED MOTION FOR ORDER APPROVING (A) BID AND SALE PROCEDURES
INCLUDING BREAK-UP FEE TO TRICOL INTERNATIONAL GROUP LIMITED AS STALKING HORSE
BIDDER, (B) SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS ASSETS AND
ENCMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16

1    industry buyers.  The data room was opened in early June to all prospects in each group after

2    signing a non-Disclosure Agreement required to access the data room.

3              6.        By June 2015 the strategy changed to focusing on a sale of Debtor's

4    assets.  A non-exclusive Advisory Services Agreement was entered into in September 2015

5    with Healthios Capital Markets, LLC ("Healthios"), a registered broker/dealer focused

6    exclusively on HealthCare transactions with offices in Boston, London, Geneva and

7    Bangkok.  Healthios targeted 37 industry leaders on the acquisition of Debtor's assets.  At the

8    same time, Debtor's executives contacted 38 individual investors and small funding sources.

9    In addition, approximately 12 broker/dealer investment firms were contacted to discuss

10   capital infusions or merger and acquisition interest.

11             7.        From June through December 2015, Debtor engaged in 83 meetings

12   with prospective purchasers and hosted nine site visits regarding a potential sale.  The sales

13   efforts resulted in 1,106 document views and downloads from Debtor's due diligence room.

14   Substantive negotiations resulted in two stalking horse offers and proposed asset purchase

15   agreements.

16             8.        After due consultation with its advisors, Debtor exercised its business

17   judgment to enter into the Asset Purchase Agreement with Tricol for the sale of substantially

18   all of Debtor's assets pursuant to a sale under Section 363 of the Bankruptcy Code ("Stalking

19   Horse APA" or "APA").  A copy of the Stalking Horse APA is attached hereto as Exhibit A

20   and incorporated herein by reference.

21             9.        The sale proposed under the Stalking Horse APA is subject to the

22   receipt of higher and better offers received through a court-approved auction or sale process.

23   If the auction yields a higher and better offer, Debtor will seek authority to effect a sale with

24   the winning bidder.

25

26

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16

**REQUESTED RELIEF**

2           10.    Debtor requests that the Court enter a bid procedures order in

3 substantially the form attached hereto as Exhibit B ("Bid Procedures Order") which:

    a.    authorizes and approves bid procedures in connection with the
receipt and analysis of competing bids, substantially in the
form attached as Exhibit 1 ("Bid Procedures") to the Bid
Procedures Order;

    b.    authorizes and approves procedures (the "Assumption
Procedures") for the assumption and assignment of those
executory contracts and unexpired leases designated by the
successful bidder at the auction (the "Assumed Agreements");

    c.    approves the form and manner of notice of (i) the sale and
hearing thereon, and (ii) the assumption, assignment and
proposed cure costs of Assumed Agreements substantially in
the form attached hereto as Exhibit C (the "Sale Notice"); and

    d.    establishes the following dates and deadlines, subject to
modification as needed, relating to competitive bidding and
approval of the sale:

- <u>Bid Deadline</u>:  March 18, 2016 at 5:00 p.m. prevailing
Pacific time, as the deadline by which all binding bids
must be actually received by Debtor's counsel pursuant
to the Bid Procedures (the "Bid Deadline").

- <u>Objection Deadline</u>:  March 18, 2016 at 5:00 p.m.
prevailing Pacific time as the deadline to object to the
sale transactions and/or the assumption and assignment
of Assumed Agreements or cure costs related thereto.

- <u>Auction</u>:  March 28, 2016 at 10:00 a.m. prevailing
Pacific time, as the date and time the auction, if one is
needed (the "Auction"), will be held at the offices of
Tonkon Torp LLP, 888 S.W. Fifth Avenue, Suite 1600,
Portland, Oregon, 97204.

- <u>Sale Hearing</u>:  March 30, 2016 at 9:30 a.m. or such
other time as is announced at the conclusion of the
Auction (the "Sale Hearing"), which will be held before
the Honorable Peter C. McKittrick, United States
Bankruptcy Judge for the United States Bankruptcy
Court for the District of Oregon, Courtroom No. 1 1001
S.W. Fifth Avenue, Portland, Oregon.

    e.    approves Tricol as the Stalking Horse Bidder and entitlement
to a cash break-up fee for the reimbursement of Tricol's

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1

2

reasonable and actual expenses incurred in connection with the proposed transaction up to the sum of $200,000.

11.     By this motion, Debtor also seeks entry of an order (the "Sale Order"),

3

substantially in the form agreed upon with the winning bidder, authorizing and approving

4

(a) the sale of the assets free and clear of all liens, claims, interests and encumbrances and

5

6

(b) the assumption and assignment of the Assumed Agreements in accordance with the

Assumption Procedures or, alternatively, approval of the winning bidder as the purchaser of

7

8

all common stock of the Reorganized Debtor pursuant to confirmation of the Plan.

9

**THE PROPOSED SALE**

10

12.     The principal terms of the Stalking Horse APA are as follows[1]:

11

| | |
|---|---|
| Purchaser: | Tricol or a new entity to be formed by Tricol. |
| Purchase Price: | The purchase price shall be the sum of (a) $1,600,000 plus (b) the total amount of the Assumed Liabilities (as defined in the APA), plus (c) the amount required to maintain D&O tail insurance for Seller following the Closing (up to a maximum of $150,000), plus (d) the total obligation owed by Seller under the DIP Credit Facility (as defined in the APA), and (e) the total obligation owed under the Pre-Petition Loan (as defined in the APA).  The total Purchase Price is approximately $3,600,000. |
| Assets to be Acquired: | Substantially all of the assets of Debtor's as more particularly set forth in the Stalking Horse APA. |
| Excluded Assets: | Avoidance actions under Chapter 5 of the Bankruptcy Code. |
| Assumed Liabilities: | Only those liabilities arising from events occurring after the closing date and those expressly set forth in the Stalking Horse APA.  It is contemplated that these will include (i) post-petition and pre-petition trade payables with creditors whom Tricol intends to continue to do business; (ii) customer programs; (iii) ordinary course of business liabilities owed to employees that become employees of buyer; (iv) liabilities arising under any Assumed Agreements; (v) administrative expense liabilities; and (vi) the premium for D&O tail insurance. |
| Excluded Liabilities: | All liabilities other than those expressly identified as Assumed Liabilities. |

12

13

14

15

16

17

18

19

20

21

22

23

24

---

[1] This summary is provided for the convenience of the Court and interested parties.  It is not

25

intended to be a complete summary of the Stalking Horse APA.  To the extent there is any
conflict between this summary and the Stalking Horse APA, the Stalking Horse APA

26

governs in all respects.

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16

| | | |
|---|---|---|
| Assumption and Assignment of Executory` Contracts: | | Debtor will assume all executory contracts and unexpired leases designated by Buyer, with any cure costs in connection therewith to be paid by Buyer. |
| Closing Conditions: | | The Bankruptcy Court shall have entered the Sale Order including the assumption and assignment of the designated executory contracts and leases, which order shall not have been reversed, modified, amended or stayed at the time of closing. The representations and warranties of the parties set forth in the Stalking Horse APA shall remain true and correct and both parties shall have performed in all material respects the covenants set forth therein. Buyer shall have obtained the consents to assignment of patent licenses with Providence and Dr. Gregory. Buyer shall have entered into mutually acceptable employment agreements for the continued employment of Michael Wax, Stuart Sands, and Simon McCarthy. |
| Bid Protections: | | Approval of Tricol as Stalking Horse Bidder and break-up fee for expenses up to $200,000. Initial overbid must be at least $450,000 in cash in excess of the Stalking Horse APA Purchase Price. |

13. In addition to the above general sale provisions, the following sale provisions are disclosed in accordance with applicable local rules and guidelines:

| | | |
|---|---|---|
| Sale to Insider: | | Buyer is not an insider as defined in Bankruptcy Code § 1101(31). |
| Sale Free and Clear: | | The sale will be free and clear of liens and other interests, and the parties with such interest and the nature of those interests are set forth below. |
| Liens: | | Certain assets are encumbered by a lien asserted by Sussex Associates, L.P. ("Sussex"). The amount of the secured claim is in excess of $5,000,000. All assets are also be encumbered by Tricol pursuant to post-petition financing obtained in this case in the sum of $800,000, which post-petition lien will continue in the assets until the post-petition financing is paid in full. |
| Releases and Insider Benefits: | | None, except for employment contracts with Mr. Wax and Mr. McCarthy and termination agreement with Mr. Sands. |
| Closing Deadlines: | | The sale shall close on or before March 31, 2016, or the earliest practicable date after entry of the Sale Order. |
| Good Faith Deposit: | | Tricol has deposited the sum of $200,000. Qualified bidders will be required to submit a good faith deposit equal to $400,000 (to cover the Break-Up Fee and their own $200,000 deposit). |
| Interim Arrangement with Proposed Buyer: | | None, except the DIP Facility as set forth in the motion [ECF no. 11] filed by Debtor on January 15, 2016 and the Interim Order [ECF No. 36] entered on January 22, 2016. |

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

| | | |
|---|---|---|
| Use of Proceeds: | | Proceeds from the sale will be distributed to the secured and other creditors as set forth in the Stalking Horse APA and pursuant to further order of the Court. |
| Record Retention: | | After the sale, Debtor will have reasonable access to the books and records as necessary to administer the Chapter 11 case and file final returns as appropriate. |
| Sale of Avoidance Actions: | | The sale does not include the sale of any avoidance claims under Chapter 5 of the Bankruptcy Code. |
| Requested Findings as to Successor Liability: | | Buyer shall not be a successor to Debtor and shall have no liability or responsibility for any liability or obligation of Debtor other than as expressly set forth in the Stalking Horse APA. The sale to Buyer will not subject Buyer or its affiliates, successors or assigns or their respective properties to any liability for claims against Debtor or Debtor's Assets. |
| Credit Bidding: | | The motion does not seek to limit credit bidding under Section 363. |
| Standard for Approval: | | The motion seeks approval of the proposed sale pursuant to the business judgment standard. |
| Relief from Bankruptcy Rule 6004(h): | | This motion requests relief from Bankruptcy Rule 6004(h). |
| Solicitation Process: | | Notice of the proposed sale will be given to all parties and creditors in interest, and parties previously expressing an interest in Debtor's assets. |

## AUCTION AND BID PROCEDURES

14.     The proposed Bid Procedures are intended to permit a fair and

efficient competitive sale consistent with the time line of this Chapter 11 case and promptly

identify any alternative bid that is higher or otherwise better than the bid set forth in the

Stalking Horse APA. Because the Bid Procedures are attached as Exhibit 1 to the proposed

Bid Procedures Order, they are not restated herein. Generally speaking, however, the Bid

Procedures establish, among other things:

- The deadlines and requirements for becoming a Potential Bidder, submitting competing bids and the method and criteria by which such competing bids are to become entitled to be Qualified Bids sufficient to trigger an Auction, including the minimum consideration that must be provided and the terms and conditions that must be satisfied by any Bidder (other than Tricol) to be entitled to be a

TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

| | |
|---|---|
| 1 | Potential Bidder and a Qualified Bidder" (*See* Bid. Proc. at ¶¶ B, D). |
| 2 | |
| 3 | • The manner in which Qualified Bids will be evaluated by Debtor to determine the starting bid for the Auction (*See* Bid. Proc. at ¶ E). |
| 4 | |
| 5 | • The procedures for conducting the Auction, if any (*See* Bid. Proc. at ¶ G). |
| 6 | • The criteria by which the "Successful Purchaser" will be selected by Debtor, in consultation with its advisors (*See* Bid. Proc. at ¶ H-I). |
| 7 | |
| 8 | • Various other matters relating to the sale process generally, including the Sale Hearing, designation of a Back-Up Bidder, payment of the bid protections, return of any Sale Deposits and certain reservations of rights (*See* Bid. Proc. at ¶¶ J-M). |
| 9 | |
| 10 | |

15. The Bid Procedures recognize Debtor's fiduciary obligations to maximize sale value, and, as such, do not impair Debtor's ability to consider all qualified bid proposals, and preserve Debtor's right to modify the Bid Procedures as necessary or appropriate to maximize value for Debtor's estate in consultation with key parties set forth therein.

16. The Bid Procedures contain the following provisions that are required to be highlighted pursuant to local rules and guidelines:

(i) <u>Provisions Governing Qualification of Bidders</u>. The provisions governing an entity's right to become a Qualified Bidder are set forth in paragraphs B and D of the Bid Procedures.

(ii) <u>Provisions Governing Qualified Bids</u>. The provisions governing Qualified Bids are set forth in paragraphs D and E of the Bid Procedures. Such provisions include, among other things, the deadlines for submitting a bid, the requirements for submitting a bid, the assets to be included in the bid, the period the bid must remain open, and the requirement to provide the Sale Deposit. Tricol is deemed to have satisfied all of the bidding conditions.

(iii) <u>Provisions Providing Bid Protections to "Stalking Horse" Bidder</u>. Paragraph A of the Bid Procedures sets forth the "stalking horse" bidder protections. The Stalking Horse APA does not include any limitations on Debtor's ability to solicit

DEBTOR'S SECOND AMENDED MOTION FOR ORDER APPROVING (A) BID AND SALE PROCEDURES INCLUDING BREAK-UP FEE TO TRICOL INTERNATIONAL GROUP LIMITED AS STALKING HORSE BIDDER, (B) SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS ASSETS AND ENCMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16

1  higher or better bids.  It does provide for the provision of a Break-Up Fee for expenses incurred up to the amount of
2  $200,000, which shall be paid in the event that the Assets are sold to a party other than Tricol.

3

4  (iv)  Bidding Increments.  Paragraphs D and G of the Bid Procedures set forth the amount of the initial bid and any successive bidding increments.

5

6  (v)  Due Diligence Period.  Interested parties shall have until the Bid Deadline to conduct due diligence.  Paragraph C of the Bid Procedures sets forth the requirements for obtaining due
7  diligence access.

8  (vi)  Modification of Bidding and Auction Procedures. Paragraph M of the Bid Procedures authorizes Debtor, without
9  further order of the Court, to modify the Bid Procedures.

10  (vii)  Closing with Alternative Backup Bidders.  Paragraph J of the Bid Procedures addresses the ability of Debtor to sell the
11  Assets to the Back-Up Bidder.

12  (viii)  Provisions Governing the Auction.  Paragraph G of the Bid Procedures sets forth the provisions governing the auction, and
13  this Motion specifies the date, time and place at which the Auction will be conducted and the method for providing notice
14  to parties of any changes thereto.  Further, Paragraph D(1) of the Bid Procedures requires each bidder to identify whether it
15  is bidding for itself or others and if for others, the identities of such parties and whether the bidder is party to any agreement
16  limiting the bidders at the auction.

17

**SUMMARY OF THE ASSUMPTION AND ASSIGNNMENT PROCEDURES**
18
            17.     Debtor is also seeking approval of certain procedures to facilitate
19
the fair and orderly assumption and assignment of the Assumed Agreements in
20
connection with the Sale.  The Assumption Procedures are as set forth below.
21
                    **Notice of Cure Procedures**.  Debtor will file a cure
22                  schedule (the "Cure Schedule") and serve such
                    schedule and an Assumption and Assignment Notice
23                  by first class mail on the parties to those executory
                    contracts and unexpired leases that will be included
24                  in any sale and those other executory contracts and
                    unexpired leases that may be included in the sale (the
25                  "Assumed Agreements") by March 4, 2016.  The
                    Cure Schedule will include the (i) Assumed
26                  Agreements; (ii) the name and contact information of

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

| | |
|---|---|
| 1 | the counterparty to each Assumed Agreement; and (iii) the proposed cure amount for each Assumed |
| 2 | Agreement. |
| 3 | **Objections**. Any objection to the assumption and assignment of the Assumed Agreements identified |
| 4 | on the Cure Schedule, including objections to the cure amount set forth on such schedule and to |
| 5 | adequate assurance of future performance, must be filed with the Bankruptcy Court no later than |
| 6 | March 18, 2016. |
| 7 | **Resolution of Objections**. If no objection is timely filed to the assumption and assignment of an |
| 8 | Assumed Agreement, the counterparty to such Assumed Agreement will be barred from objecting |
| 9 | thereto and shall be deemed to consent to the assumption and assignment of such Assumed |
| 10 | Agreement. If no objection is timely filed to the proposed cure amount with respect to an Assumed |
| 11 | Agreement, then the cure amount set forth in the Cure Schedule shall be binding upon the non-debtor |
| 12 | party to such Assumed Agreement for all purposes in this Chapter 11 case and will constitute a final |
| 13 | determination of the total cure amount required to be paid in connection with the assumption and |
| 14 | assignment thereof. |
| 15 | If a timely objection is filed and such objection cannot otherwise be resolved by the parties, the |
| 16 | Bankruptcy Court may hear such objection at the Sale Hearing, or any adjourned date thereof. The |
| 17 | pendency of a dispute relating to a proposed cure amount will not delay the closing of the sale, |
| 18 | including the assumption and assignment of Assumed Agreements necessary to effectuate such |
| 19 | closing, provided that, for any dispute relating to a proposed cure amount that is unresolved by the date |
| 20 | of the closing on the sale, Buyer shall pay and Debtor shall escrow the claimed cure amount |
| 21 | requested with respect to such unresolved objection pending such resolution. |
| 22 | |
| 23 | **BASIS FOR RELIEF REQUESTED** |
| 24 | A.   **SALE OF ASSETS** |
| 25 | 18.     Section 363(b)(1) of the Bankruptcy Code provides that "Debtor, after |
| 26 | notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, |

TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

property of the estate." This provision generally allows a trustee (subject to court approval) to sell property of the estate outside the ordinary course of business where the proposed sale is a sound exercise of Debtor's business judgment and when the sale is proposed in good faith and for fair value. *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997). When a trustee articulates a reasonable basis for its business decisions, "courts will generally not entertain objections to the [trustee's] conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

19.    The decision to sell the assets has been approved by Debtor's board of directors as necessary given Debtor's lack of sufficient capital to continue operations. The assets are fully encumbered by Tricol to secure post-petition financing extended by Tricol to Debtor. Tricol's security interest will continue in the assets until the post-petition financing is paid in full. Debtor's accounts, inventory, purchase orders, intellectual property and patents are encumbered by the Sussex to secure pre-petition loans. A sale will provide the secured creditors with a greater return than liquidation and with prompt payment. The proposed sale will also result in the continued employment of many of Debtor's employees and preserve business relationships and sales for vendors, customers, and other parties who are presently doing business with Debtor. A sale will provide certainty of ownership and continuity of the business which would not otherwise be possible. Debtor does not have sufficient resources to continue operating or file a plan of reorganization prior to the proposed sale. Debtor has determined that it is in the best interests of Debtor's estate to sell the Assets under 11 U.S.C. § 363 to Tricol or another buyer who can continue some or all of Debtor's operations.

20.    The Stalking Horse APA was negotiated at arm's length, in good faith, and Debtor believes its terms are fair and reasonable. Tricol is not an "insider" of Debtor and

- DEBTOR'S SECOND AMENDED MOTION FOR ORDER APPROVING (A) BID AND SALE PROCEDURES INCLUDING BREAK-UP FEE TO TRICOL INTERNATIONAL GROUP LIMITED AS STALKING HORSE BIDDER, (B) SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS ASSETS AND ENCMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1  neither Debtor nor its management has a financial interest in the transactions contemplated

2  by the Stalking Horse APA other than continued employment.

3         21.    Debtor proposes to effect the sale only after holding the Auction

4  pursuant to the Bid Procedures, which procedures are designed to procure the highest and

5  best offer for the sale of the assets.

6

7  **B.    SALE FREE AND CLEAR OF LIENS, CLAIMS AND
       ENCUMBRANCES**

8         22.    Debtor requests that the Court authorize the sale free and clear of all

9  liens, claims and encumbrances which may be asserted against the assets, with any such

10  liens, claims, interests and encumbrances attaching to the proceeds of the sale.  The

11  Successful Bidder will have no successor liability to any creditor who holds a claim as of the

12  closing date except as specifically stated in the APA and all such creditors will be forever

13  enjoined from seeking to enforce or collect any such claim from or against the successful

14  bidder.

15         23.    Tricol (and potential bidders in the auction process) will only buy the

16  assets if they are "free and clear" of liens.

17         24.    Holders of liens and interests in the assets will be adequately protected

18  because they will be paid from the sale proceeds or their interests will attach to the proceeds

19  of the sale.

20  **C.    ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS**

21         25.    As described above, as part of the sale contemplated by the Stalking

22  Horse APA, Debtor intends to assume and assign certain executory contracts.

23         26.    Under § 365(a), Debtor may assume or reject an executory contract,

24  subject to the court's approval.  In determining whether to approve a request for approval of

25  assumption of an executory contact, the bankruptcy court applies the business judgment rule.

26

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16

1    27.    In addition to passing the business judgment test, Section 365(b) of the

2    Bankruptcy Code requires that a debtor meet certain additional requirements to assume an

3    executory contract:

4                   If there has been a default in an executory
              contract or unexpired lease of the debtor, Debtor may
5              not assume such contract or lease unless, at the time
              of assumption of such contract or lease, Debtor—
6
                   (A)    cures, or provides adequate assurance
7              that Debtor will promptly cure, such default;

8                   (B)    compensates, or provides adequate
              assurance that Debtor will promptly compensate, a
9              party other than the debtor to such contract or lease,
              for any actual pecuniary loss to such party resulting
10             from such default; and

11                  (C)    provides adequate assurance of future
              performance under such contract or lease.
12

13    28.    Similarly, Section 365(f)(2) applies similar requirements to the

14    assignment of an executory contract, stating that the contract may be assigned if:

15             (A)    Debtor assumes such contract or lease in
                      accordance with the provisions of this section;
16                    and

17             (B)    adequate assurance of future performance by the
                      assignee of such contract or lease is provided,
18                    whether or not there has been a default in such
                      contract or lease.
19

20    29.    In this case, Debtor's proposed assumption and assignment of the

21    executory contracts to Tricol or another bidder would fulfill the "cure" and "adequate

22    assurance" requirements for assumption and assignment set forth in the aforementioned

23    statutes.  Any defaults under the contracts and leases would be cured by Tricol at closing or

24    as soon thereafter as the Court establishes the amount of the cure payment needed (or the

25    parties agree on such amount).  If another entity is the successful purchaser, it will have had

26

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

1    to satisfy Debtor and the Court of its financial strength and, therefore, similarly will fulfill

2    the "adequate assurance" requirement.

3            30.     Some, if not all, of the executory contracts at issue may contain

4    provisions purporting to prohibit or condition the assignment to third parties.  The

5    Bankruptcy Code specifically prohibits the termination or modification of executory

6    contracts based on such clauses that restrict assignment.  11 U.S.C. § 365(f).

7        **D.      BID PROTECTIONS**

8            31.     Debtor also requests approval of a breakup fee of $200,000.  The

9    breakup fee would be payable to Tricol in the event another bidder prevails at the Auction

10   and an alternate sale ultimately is approved.

11           32.     In evaluating breakup and similar fees, courts have applied three basic

12   standards: (a) the business judgment test; (b) the best interests of creditors test; and (c) the

13   "actual and necessary" or administrative expense test.  It appears that the Ninth Circuit has

14   not adopted (or rejected) any of the foregoing tests.  No matter which test it chooses to apply,

15   however, it would be appropriate for the Court to approve the Break-Up Fee.

16           33.     Although courts may apply different analytical standards, they

17   generally reach the same conclusion:  breakup fees are appropriate when they encourage

18   bidding and are in the best interest of the estate.  *See, e.g., In re Integrated Resources, Inc.,*

19   147 B.R. 650 (S.D.N.Y. 1992), *app. dismissed on jurisdictional grounds*, 3 F.3d 49 (2d Cir.

20   1993) (applying the business judgment standard to approve breakup fee that helped attract

21   and retain a potentially successful bid and attract other bidders); *In re America West Airlines,*

22   *Inc.,* 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (applying the best interest of creditors tests

23   and focusing on "whether the transaction will further the diverse interests of the debtor,

24   creditors and equity holders alike"); *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527,

25   535 (3d Cir. 1999) (applying the "actual and necessary" test and stating that the estate

26   benefits if the breakup fee induced "a bid that otherwise would not have been made * * *");

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16

1  *In re 995 Fifth Avenue Associates, L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding

2  incentives may be "legitimately necessary to convince a white knight to enter the bidding by

3  providing some form of compensation for the risks it is undertaking").

4          34.     Here, the break-up fee is designed to compensate Tricol for the time

5  and expense of negotiation and due diligence in connection with its proposed purchase.  The

6  amount of the break-up fee is the amount of expenses incurred by Tricol in connection with

7  the proposed transaction up to the maximum amount of $200,000.

8  **E.      NON-APPLICABILITY OF STAY**

9          35.     In addition to the other sale-related relief sought herein, Debtor

10  requests that the Court specifically find inapplicable any stays that might otherwise inhibit

11  Debtor's ability to close the proposed transactions for the sale of the assets immediately after

12  the Court enters an order approving the transactions, including, without limitation, those

13  arising under Bankruptcy Rules 6004 or 6006.  Any delay in a closing of the sale would

14  mean substantial potential harm to Debtor, its creditors and its estate as the terms of the

15  proposed sale require closing on or before April 30, 2016.

16  **NOTICE**

17          36.     Debtor proposes to give notice of the Auction, this Motion and the

18  Sale Hearing as follows:  serve a copy of this Motion and the Sale Notice upon (i) counsel for

19  the unsecured creditors committee appointed in this case; (ii) all persons or entities required

20  to be served pursuant to orders of this Court; (iii) all parties who have filed requests for

21  notice under Bankruptcy Rule 2002 as of the date of service; (iv) all persons or entities who

22  to the knowledge of Debtor hold a lien upon the assets; (v) the Office of the United States

23  Trustee; and (vii) all non-debtor parties to the Assumed Agreements.  In addition, Debtor

24  shall serve the Notice of Motion to Approve Sale to Tricol or Higher and Better Bidder at

25  Auction, Auction, Bidding Procedures, Sale Hearing, and Objection Deadlines on all

26  creditors and parties in interest reflected in the mailing matrix on file with the Court.

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11   Doc 50   Filed 01/26/16

1      37.      Debtor submits that such notice constitutes good and sufficient notice

2  of the competitive offer procedures, this Motion, and all proceedings to be held thereon and

3  that no other or further notice need be given.

4          WHEREFORE, Debtor respectfully requests that the Court (a) enter an order

5  approving the Bid Procedures; and (b) as soon as practicable after completion of the Auction,

6  enter an order (i) approving the sale of the assets (or stock) to Tricol or other successful

7  purchaser, (ii) approving such sale free and clear of all liens, claims and encumbrances with

8  such interests attaching to the sale proceeds; (iii) approving the assumption and assignment

9  of executory contracts and unexpired leases to Tricol or other successful purchaser;

10 (iv) declaring all stays including, without limitation, those arising under Bankruptcy Rules

11 6004 or 6006 inapplicable; and (v) such other and further relief as may be just and proper.

12          DATED this 26th day of January, 2016.

13                                    TONKON TORP LLP

14

                                     By /s/ Albert N. Kennedy
15                                      Albert N. Kennedy, OSB No. 821429
                                       Timothy J. Conway, OSB No. 851752
16                                      Attorneys for Debtor

17

18

19

20

21

22

23

24

25

26

**Page 16 of 16** - DEBTOR'S SECOND AMENDED MOTION FOR ORDER APPROVING (A) BID AND SALE PROCEDURES
INCLUDING BREAK-UP FEE TO TRICOL INTERNATIONAL GROUP LIMITED AS STALKING HORSE
BIDDER, (B) SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS ASSETS AND
ENCMBRANCES, AND (C) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-30119-pcm11    Doc 50    Filed 01/26/16